Byron A. Talbot and Margaret Ann Talbot v. Commissioner.
Talbot v. Commissioner
Docket No. 68758.
United States Tax Court
T.C. Memo 1959-243; 1959 Tax Ct. Memo LEXIS 2; 18 T.C.M. (CCH) 1154; T.C.M. (RIA) 59243; December 31, 1959
*2 Respondent ascertained by net worth computation that petitioners had unreported income for 1951, and determined a deficiency. Held, subject to a minor adjustment, respondent's determination is sustained. Held further, respondent's additions to tax pursuant to sections 293(a) and 294(d)(1)(A), I.R.C. 1939, are sustained and his addition to tax pursuant to section 294(d)(2) is denied. Byron A. Talbot, 586 Gail Court, Teaneck, N.J., pro se. A. Jesse Duke, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves a deficiency and additions to tax for the calendar year 1951 as follows: Additions to Tax
Sec.
Sec. 294
Sec.
Deficiency
293(a) [1]
(d)(1)(A)
294(d)(2)
$3,333.80
$166.69
$333.38
$200.03
The issues are whether petitioners understated their taxable income for the year 1951 by $15,636.23, and whether they are subject to the above additions to tax. Findings of Fact During 1951 petitioners resided in Elmhurst, N. Y. They filed a joint individual income tax return with the collector *3 of internal revenue for the first district of New York. During, and for several years preceding the year in issue, petitioners were engaged in business as a ballroom dance team. They appeared in clubs and theatres in several states. During 1949 petitioners cashed approximately $8,800 face value of U.S. Government Series E Savings Bonds. The bonds had been purchased between 1942 and 1948. Also, in 1949 petitioners purchased for $18,000 a building having three apartments, and paid between $7,000 and $8,000 as a down payment. In 1951 petitioners cashed a Series E Savings Bond of $1,000 denomination, which had been purchased in 1948. They also purchased $10,000 worth of securities. For the year 1951 petitioners reported income from hotel and night club engagements totaling $7,280.70, and expenses totaling $6,996.52. Petitioners also reported dividend income of $62.50 and rental income of $23.08. Petitioners' total reported net income was $369.76. By net worth computation respondent ascertained that petitioners' total income during 1951 was $16,005.99, computed as follows: Dec. 31, 1950
Dec. 31, 1951
ASSETS
Cash in bank
$ 142.81
$ 902.33
Automobile
2,600.00
2,600.00
Government bonds
0
0
Securities
0
10,000.00
Residence
18,000.00
18,000.00
Total Assets
$20,742.81
$31,502.33
LIABILITIES
Mortgages payable
$ 8,042.85
$ 5,296.38
Loans payable
0
0
Total liabilities
$ 8,042.85
$ 5,296.38
Net Worth
$12,699.96
$26,205.95
Increase in Net Worth
$13,505.99
Add, Cost of living (est.)
2,500.00
Total Income
$16,005.99
*4 Respondent also determined additions to tax pursuant to sections 293(a), 294(d)(1)(A), and 294(d)(2). Opinion Petitioners' testimony and their briefs illustrate a confusion of the issues involved, a lack of understanding of the pertinent legal principles, and a lack of understanding of what is credible evidence. In this connection, it is to be noted that at the beginning of the trial, as well as during the course of the hearing, the Court called petitioners' attention to the fact that the burden of proof rested with them, of the difficulties of one not familiar with legal matters in representing himself, and of the desirability under such circumstances of being represented by an attorney. Cf. , affirming a Memorandum Opinion of this Court [. Petitioners contest respondent's use of the net worth method of computing their income. They also allege that they had $10,000 cash in a little strong box in their home, and that they used this money to purchase $10,000 worth of securities in 1951. Petitioners contend that they received a loan of $2,000 in 1951, which respondent did not take into account in the *5 net worth computation. Finally, petitioners argue that respondent's determination of expenditures totaling $2,500 for cost of living is excessive. The burden of proof is on petitioners. The exhibits presented by petitioners were as follows: A statement from the Treasury Department containing a list of Series E Bonds purchased and cashed by petitioners; a statement from petitioners' theatrical agent that he made their bookings during 1951 (the statement did not include a list of their bookings or their income); several "worksheets" which petitioners used to prepare their tax returns for the years 1947, 1948, 1950, and 1951. Byron Talbot was the only witness. His pertinent testimony may be summarized as follows: He had $10,000 cash in a little strong box and used this cash to purchase securities in 1951; he had saved this cash over a period of years; most of the cash was placed in the box some time after he cashed approximately $8,800 face value of Government bonds in 1949; the $7,000 to $8,000 he paid as a down payment on the three-apartment house in 1949 came from bank accounts in the Bank of America in Los Angeles and San Francisco; he borrowed $2,000 from his father-in-law in *6 1951; he was on the road approximately 24 weeks during 1951. Petitioners presented no books or records of consequence and have shown the Court no reason for respondent not utilizing the net worth method of reconstructing their income. Respondent's use of the net worth method is approved. Petitioners' self-serving testimony relating to the source of the $10,000 cash in the little box is not sufficient to overcome the presumptive correctness of respondent's determination. We are not satisfied that the $7,000 to $8,000 cash received for the bonds in 1949 was placed in the little box, and in this connection it is to be noted that a like amount of cash was utilized by petitioners to make a down payment on a house in the same year. Petitioners offered no bank statements from the California banks, which could very well have substantiated their story that they used savings from the banks as a down payment on the house. The presumptive correctness of respondent's determination relating to cash on hand at the beginning of 1951 must be sustained. Similarly, Byron's testimony relating to the loan from his father-in-law has not established to our satisfaction the existence of that loan. Petitioner *7 testified that no note was given for the loan, but that he gave his father-in-law a check which apparently was still being held by his father-in-law. There is no credible evidence of the existence of a $2,000 loan payable in 1951 and respondent's determination that no loan existed must be sustained. Petitioners also contest respondent's determination relating to Government bonds. According to the statement from the Treasury Department Fiscal Service, petitioners did own one $1,000 Series E Savings Bond at the beginning of 1951. This bond was sold during the year. Respondent has not allowed for such an asset in his net worth computation. Accordingly, we must reduce petitioners' total income for 1951 as determined by respondent, by $750, the cost of the bond. Finally, petitioners contest respondent's estimate of their living expenses during 1951. Respondent determined the expenses to be $2,500. Petitioners have presented no evidence on this point other than a statement that they were on the road for approximately 24 weeks during 1951. We have before us no evidence relating to petitioners' personal expenditures by which we may judge the reasonableness or unreasonableness of respondent's *8 determination. Accordingly, respondent's determination relating to cost of living expenditures is sustained on its presumptive correctness. No evidence has been presented relating to the addition to tax pursuant to section 293(a). Respondent's determination, adjusted in accordance with the above holdings, is sustained. Respondent also determined additions to tax under sections 294(d)(1)(A) and 294(d)(2). Respondent's addition pursuant to 294(d)(1)(A) is based upon petitioners' alleged failure to file declarations of estimated tax. No evidence has been presented on these issues. However, in view of the recent Supreme Court decision in Commissioner v. Acker, - U.S. - (Nov. 16, 1959), we may only sustain respondent's additions to tax under section 294(d)(1)(A). Accordingly, respondent's determination with respect to section 294(d)(1)(A), adjusted pursuant to the above holdings, is sustained, and his determination with respect to section 294(d)(2) is denied. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1939.↩